## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RONALD ALEXANDER                                    CIVIL ACTION

VERSUS                                              NO. 19-9159

ROBERT TANNER                                       SECTION: "S"(3)


### REPORT AND RECOMMENDATION

Petitioner, Ronald Alexander, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

On December 3, 2015, petitioner was convicted under Louisiana law of two counts of armed robbery and two counts of being a felon in possession of a firearm.[1]  On December 17, 2015, he was sentenced on each of the armed robbery convictions to forty years imprisonment and on each of the firearm convictions to ten years imprisonment.  All of those sentences were to be served concurrently.  He was additionally sentenced to a consecutive five years as a sentencing enhancement for using a firearm in the armed robberies.  It was ordered that forty-five years of his sentences be served without benefit of parole, probation, or suspension of sentence.[2]  On January 22, 2016, he was then found to be a second offender and was resentenced as such on one of the armed robbery convictions to a term of forty-nine and one-half years imprisonment without benefit of probation or suspension of sentence.[3]  On July 27, 2016, the Louisiana Fifth Circuit Court of

---

[1] State Rec., Vol. 5 of 6, transcript of December 3, 2015, p. 40; State Rec., Vol. 1 of 6, minute entry dated December 3, 2015.

[2] State Rec., Vol. 5 of 6, transcript of December 17, 2015; State Rec., Vol. 2 of 6, amended minute entry dated January 29, 2016.

[3] State Rec., Vol. 5 of 6, transcript of January 22, 2016; State Rec., Vol. 2 of 6, minute entry dated January 22, 2016.

Appeal affirmed his convictions, affirmed his sentences on the convictions for being a felon in possession of a firearm, amended his sentences on the armed robbery convictions to delete the additional firearm enhancement, amended his habitual offender sentence to forty years imprisonment without benefit of parole, probation, or suspension of sentence, and affirmed those sentences as amended.[4] The Louisiana Supreme Court then denied his related writ application on June 16, 2017.[5]

On or about September 8, 2017, petitioner filed an application for post-conviction relief with the state district court.[6] That application was denied on November 9, 2017.[7] His related writ applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal on January 30, 2018,[8] and the Louisiana Supreme Court on March 6, 2019.[9]

Petitioner thereafter filed the instant federal habeas corpus application asserting two claims.[10] The state filed a response arguing that, although the application is timely and petitioner's claims are exhausted, relief should nevertheless be denied because his claims fail on the merits.[11] Petitioner filed a reply.[12]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155

---

[4] State v. Alexander, 197 So. 3d 843 (La. App. 5th Cir. 2016); State Rec., Vol. 5 of 6.
[5] State v. Alexander, 219 So. 3d 340 (La. 2017); State Rec., Vol. 5 of 6.
[6] State Rec., Vol. 2 of 6.
[7] State Rec., Vol. 2 of 6, Order dated November 9, 2017.
[8] Alexander v. State, No. 18-KH-44 (La. App. 5th Cir. Jan. 30, 2018); State Rec., Vol. 2 of 6.
[9] State v. Alexander, 264 So. 3d 1202 (La. 2019); State Rec., Vol. 6 of 6.
[10] Rec. Doc. 4.
[11] Rec. Doc. 14.
[12] Rec. Doc. 15.

(5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court), cert. denied, 140 S. Ct. 2676 (2020). The applicable standards of review are now as follows.

As to pure questions of fact, factual findings are presumed to be correct and a federal court must give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

Further, the Supreme Court has expressly cautioned:

Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at

4

hand, then by definition the rationale was not clearly established at the time of the state-court decision.    AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – *and federal courts* – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added).  The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  Woodall, 572 U.S. at 417.

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> Adeel Masood, a cab driver, testified that he was robbed shortly after midnight on June 5, 2014, when he exited his cab to return home.  He stated that a man came from behind him, placed a gun in his back, and demanded money.  Mr. Masood gave the man everything he had, including his phone, keys, wallet, and money.  Mr. Masood testified that he saw the man's face "a little bit," and saw the gun, which was a gray color.
> A few days later, on June 10, 2014, a police officer presented Mr. Masood with a photographic lineup and he identified defendant as the perpetrator.  At the time of trial, Mr. Masood indicated that he was unable to identify the person who robbed him because it was two years later.  However, according to Mr. Masood, at the time that the photographic lineup was presented to him, he was certain that he picked out the right person.
> Deputy Thomas Rogerson of the Jefferson Parish Sheriff's Office testified that in the early morning hours of June 5, 2014, he responded to the scene of an armed robbery.  Deputy Rogerson met with the victim, Mr. Masood, who informed

him that he was a taxi driver and that he parked his cab in the 6200 block of Riverside Drive in Metairie, Louisiana. When Mr. Masood exited the cab to relocate to his personal vehicle, he heard a voice behind him. Mr. Masood informed the deputy that he observed a light-skinned black male wearing a black shirt, green pants, and a green hat. He also told Deputy Rogerson that the man had a silver firearm and demanded his belongings. He stated that he gave the man his phone, wallet, keys, and approximately $110.00 in cash.

Haley Duerst testified that on June 6, 2014, at approximately 6:15 p.m., she was robbed while in the parking lot of her apartment complex located at 6201 Riverside Drive. Ms. Duerst explained that after she parked and exited her vehicle, she heard someone approaching her. As she turned, she saw a man pointing a gray and black pistol in her face. She stated that the man told her to "give me what you got." Ms. Duerst testified that she continued walking, and he violently ripped her purse off of her arm and ran away.

Ms. Duerst testified that her keys, phone, wallet, debit cards, license, and cash were in her purse. She described the perpetrator as a light-skinned black male approximately her height and age with a "ruddy" complexion, which she indicated may have been stubble, acne scars, or "pot marks" on his face. During the investigation, Ms. Duerst was unable to identify the perpetrator from a photographic lineup.

Ms. Duerst testified that all of the photos from her phone were automatically backed up to her Microsoft One Drive. She testified that when she logged into her account on the day after the incident, she found three pictures taken by someone else. Ms. Duerst stated that one of the photos depicted a person who appeared to be in her neighborhood and another photo depicted the same person holding a gun. She testified the person in the photos was not the person who robbed her. However, she recognized the gun as the same one used during the robbery. She stated that she now knows that the person in the photos was Duwan Seaton.

Duwan Seaton testified that in June of 2014, she was living with her girlfriend, Jasmine Robinson, in an apartment on Riverside Drive. She stated that defendant was also staying in that apartment. She testified that on June 5, 2014, shortly after midnight, she left the apartment with defendant to obtain some "weed." According to Ms. Seaton, the "weed man" was not there, so she and defendant began walking back to the apartment.

Ms. Seaton testified that she was about to take a shortcut home when defendant ran up to a man who was getting out of his cab and demanded that the man give him everything. The man gave defendant his phone and wallet, and then defendant and Ms. Seaton ran in different directions. Ms. Seaton testified that she did not see defendant holding a gun. She stated that they met back inside of the apartment, where defendant removed everything from the wallet, including approximately $50.00, an I.D., and a credit card. Seaton testified that defendant gave her some cash from the wallet.

Ms. Seaton testified that on the next day, June 6, 2014, between 6:30 p.m. and 7:00 p.m., she and defendant were checking car doors to see if they were unlocked. Ms. Seaton testified that after she retrieved some change from an unlocked car, she heard and saw a woman screaming for help. As the woman was

screaming, she saw defendant "jacking" or grabbing the woman's purse. Ms. Seaton again testified that she did not see defendant with a gun. She stated that defendant ran off, and she ran in a different direction to Ms. Robinson's apartment.

According to Ms. Seaton, when defendant arrived at the apartment, he had a multi-colored purse and he stated that he "hit a lick," which she explained meant to "jack somebody" or "you took something without anybody offering or giving it to you." Defendant emptied everything out of the purse, including a wallet, an I.D., and a credit card. Ms. Seaton testified that she did not see a cell phone at that time.

According to Ms. Seaton, after they emptied the purse, defendant drove himself and Ms. Seaton to a Discount Zone in a Jeep owned by defendant's girlfriend, Lakeedra Bolden. Ms. Seaton stated that she and defendant used the credit card from the purse to purchase gas for the Jeep and for others at the gas station in exchange for cash.

After they returned to the apartment, defendant gave Ms. Seaton a phone that he pulled out of his pocket. Ms. Seaton stated that she used the phone to make calls, to take pictures, and to text the pictures to a friend. She testified that Ms. Robinson took two pictures of her with the phone, including one picture in which Ms. Seaton was holding a gun.

Detective Marc Macaluso testified that he investigated the robbery of Ms. Duerst. He stated that Ms. Duerst provided a description of the suspect as a black male, approximately 5′10″ to 5′11,″ 20 to 25 years old, with a light complexion and acne scarring on his cheeks. Detective Macaluso testified that Ms. Duerst described the gun used in the robbery as a black and silver semiautomatic pistol.

Detective Macaluso testified that the day after the robbery, Ms. Duerst informed him of pictures on her phone that she was able to remotely access. Additionally, she informed him of some numbers that she did not recognize and debit card transactions that occurred after the robbery. He stated that Ms. Duerst sent him some photos that included Ms. Seaton holding a black and silver gun. He testified that Ms. Duerst indicated that the person in the pictures was not the person who robbed her but that she believed the gun in the picture was the gun used in the robbery.

According to Detective Macaluso, Ms. Duerst's debit card had three completed transactions and one attempted transaction at two different gas stations. He stated that he obtained video footage of two subjects filling up gas tanks at one of the gas stations, and these subjects were later identified as defendant and Ms. Seaton. Detective Macaluso testified that the video also showed the subjects in a gold Jeep. According to Detective Macaluso, when defendant later turned himself in at the police station, he arrived in what appeared to be the same gold Jeep.

Sergeant Joel O'Lear, a latent print examiner for the Jefferson Parish Sheriff's Office, testified that he obtained defendant's fingerprints and compared them to fingerprints in two certified conviction packets from convictions for aggravated burglary and felony carnal knowledge of a juvenile. He stated that it was his opinion that defendant was the same person who was fingerprinted in both prior cases. Furthermore, the certified conviction packets reflect that the defendant in the prior cases has the same date of birth as defendant.

7

At trial, defendant testified on his own behalf. He stated that he did not know Mr. Masood or Ms. Duerst and had never seen either of them prior to trial. Defendant testified that he did not rob Mr. Masood on June 5, 2014, or Ms. Duerst on June 6, 2014, and he was not with Ms. Seaton on those dates. He stated that he was with his mother and her friend in Raceland, Louisiana.

Defendant testified that he had prior convictions in 2009 for aggravated burglary, accessory to armed robbery, and contraband in a jail cell, and in 2012 for obstruction of justice. Defendant testified that he pled guilty in his prior cases and accepted responsibility for the crimes in which he participated. He stated that he was innocent of the charges in the present case.

According to defendant, Ms. Seaton lied about him because she accepted a plea deal to avoid a lengthy sentence. He testified that he was not friends with Ms. Seaton or Ms. Robinson but he had heard of them. Defendant testified that he did not know what Ms. Seaton or Ms. Robinson had against him.

Defendant testified that all of the State witnesses were lying and that he was "the only one telling the truth." He also stated that the video at the gas station was "lying." He testified that he was not the person on the video footage at the gas station. [13]

### III.  Petitioner's Claims

### A.  Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his convictions. On direct appeal, the Louisiana Fifth Circuit Court of Appeal denied that claim, holding:

In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La. 1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found the State proved the essential elements of the crime beyond a reasonable doubt. Id.

It is not the function of the appellate court to assess credibility or re-weigh the evidence. State v. Smith, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any

---

[13] State v. Alexander, 197 So. 3d 843, 846-48 (La. App. 5th Cir. 2016); State Rec., Vol. 5 of 6.

witness. State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied, 03-2745 (La.2/13/04), 867 So.2d 688.

Defendant specifically challenges his convictions on the basis that the evidence was insufficient to prove his identity as the perpetrator of the offenses. Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Ray, 12-684 (La.App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied, 13-1115 (La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.

### Armed Robbery (counts one and three)

Defendant argues that the State failed to meet its burden of proving his identity as the perpetrator of the armed robberies of Mr. Masood (count one) and Ms. Duerst (count three) beyond a reasonable doubt. However, the record reflects that the State proved all of the elements of the offense of armed robbery in both instances and proved that defendant was the perpetrator in both robberies beyond a reasonable doubt.

To support a conviction for the offense of armed robbery under La. R.S. 14:64, the State must prove beyond a reasonable doubt: (1) the taking; (2) of anything of value; (3) belonging to another from the person of another or that is in the immediate control of another; (4) by use of force or intimidation; (5) while armed with a dangerous weapon. State v. Reaux, 14-215, p. 16 (La.App. 5 Cir. 11/25/14), 165 So.3d 944, 953, writ denied, 14-2639 (La. 10/9/15), 178 So.3d 1000.

Although Mr. Masood was unable to identify defendant as the perpetrator at trial, he identified defendant as the perpetrator in a photographic lineup approximately five days after the incident. He also testified that at the time the photographic lineup was presented to him, he was certain that he picked out the right person. Mr. Masood testified that the robber took his phone, wallet, keys, and cash from his person at gunpoint on the night of the robbery.

Detective Macaluso testified that the suspects in both robberies had similar physical descriptions. Also, the two victims were targeted in the same area and described a similar weapon used during the robberies. At trial, Ms. Duerst testified that the perpetrator was a light-skinned black male. Ms. Duerst specifically indicated that the perpetrator was about her height and age and had what looked like acne scarring on his face. Ms. Duerst testified that the robber, whose description she provided matched that of defendant, pointed a gun in her face and said "give me what you've got." Ms. Duerst testified that when she did not comply, the man violently ripped her purse from her arm, leaving her bruised.

The State also presented testimony at trial from Ms. Seaton who implicated defendant in the robberies. Ms. Seaton testified that she witnessed defendant rob the cab driver. She also heard Ms. Duerst scream and saw defendant taking Ms. Duerst's purse. Ms. Seaton also indicated that she received Ms. Duerst's stolen phone from defendant, and the two used Ms. Duerst's credit card to purchase gas. Ms. Seaton's version of events was supported by the pictures taken with Ms. Duerst's stolen phone and the video surveillance footage. Ms. Seaton identified

herself and defendant on the surveillance footage at the gas station, which directly contradicts defendant's claim that he was in Raceland on June 5 and June 6, 2014.

On appeal, defendant questions the credibility of Ms. Seaton's testimony at trial, because she received a beneficial plea agreement in exchange for her testimony. The trier of fact, in this case the judge, was aware of Ms. Seaton's plea agreement and the benefit she gained from testifying. He heard testimony from other witnesses confirming Ms. Seaton's version of events, but also had the opportunity to consider any inconsistencies in Ms. Seaton's statements. Defendant suggests that Ms. Seaton implicated him in the robbery to relieve herself of blame; however, Ms. Duerst specifically testified that Ms. Seaton, the individual in the pictures on her phone, was not the person who robbed her. The judge was in the best position to determine how credible Ms. Seaton and the other witnesses were and to make a determination regarding the weight of their testimony. The credibility of witnesses will not be reweighed on appeal. State v. Brown, 01-41, p. 9 (La.App. 5 Cir. 5/30/01), 788 So.2d 694, 701.

Considering the testimony and evidence, we find that a reasonable trier of fact could have determined that defendant was guilty beyond a reasonable doubt on both armed robbery counts. Accordingly, the trial court did not err in denying defendant's motion for new trial and motion for post-verdict judgment of acquittal on the ground of insufficient evidence with regard to the armed robberies.

### Felon in possession of a firearm (counts two and four)

Defendant was also convicted of two counts of possession of a firearm by a convicted felon. In order to convict a defendant of illegal possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that the defendant had: (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) an absence of the ten-year statutory period of limitation; and (4) the general intent to commit the offense. State v. Melancon, 14-221, p. 14 (La.App. 5 Cir. 9/24/14), 151 So.3d 100, 110, writ denied, 14-2161 (La. 5/22/15), 170 So.3d 982.

In the present case, the State offered testimony from Mr. Masood, Ms. Duerst, and Ms. Seaton that defendant was in possession of a firearm around the time of and during the two armed robberies. Mr. Masood and Ms. Duerst confirmed that defendant used a gun during the robberies in order to acquire their personal belongings. Ms. Seaton indicated that defendant gave her a gun so that she could take a picture with it.

The State offered evidence of defendant's prior felony convictions through the testimony of Sergeant O'Lear, who stated that he had taken fingerprints from defendant and compared them to fingerprints contained in the certified conviction packets for case number 08-2398, a conviction for aggravated burglary in violation of La. R.S. 14:60, and case number 06-639, a conviction for carnal knowledge of a juvenile in violation of La. R.S. 14:80. Sergeant O'Lear testified that the prints he took from defendant matched those found in both certified conviction packets. The certified conviction packet in case number 08-2398 reflects that defendant pled guilty on December 14, 2009, and defendant admitted at trial that he had a prior conviction for aggravated burglary from 2009. The certified conviction packet in

case number 06-639 reflects that defendant pled guilty on June 12, 2007.  Both of
these convictions were within ten years of the crimes in the present matter.
    Considering the testimony and evidence presented, we find that the State
proved beyond a reasonable doubt that defendant possessed a firearm as a convicted
felon, as alleged in counts two and four.  This assignment of error is without merit.[14]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning

additional reasons.[15]

    Because a claim challenging the sufficiency of the evidence presents a mixed question of

law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner

shows that the decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

2254(d)(1); Davila v. Davis, 650 F. App'x 860, 866 (5th Cir. 2016), aff'd, 137 S. Ct. 2058 (2017).

For the following reasons, the Court finds that he has made no such showing.

    In this case, the state court correctly identified the controlling federal law concerning such

claims:  Jackson v. Virginia, 443 U.S. 307 (1979).  Under Jackson, the question before a court is

not "whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.

Instead, the relevant question is whether, after viewing the evidence in the light most favorable to

the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt."  Id. at 319 (citation and quotation marks omitted).  In other words,

"[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or

innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (emphasis added) (quoting Herrera v.

Collins, 506 U.S. 390, 402 (1993)).

---

[14] State v. Alexander, 197 So. 3d 843, 848-51 (La. App. 5th Cir. 2016); State Rec., Vol. 5 of 6.
[15] State v. Alexander, 219 So. 3d 340 (La. 2017); State Rec., Vol. 5 of 6.

In addition, Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 F. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman v. Johnson, 566 U.S. 650, 655 (2012) ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Lastly, because the Jackson standard is itself deferential, and because the AEDPA's standards of review are also deferential, a federal habeas court's review of a sufficiency of the evidence claim is in fact "twice-deferential." Parker v. Matthews, 567 U.S. 37, 43 (2012); see also Coleman, 566 U.S. at 651.  Further, under the AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was objectively unreasonable." Cavazos v. Smith, 565 U.S. 1, 2 (2011) (quotation marks omitted).  As a result, "[b]ecause rational people can sometimes disagree, the inevitable consequence of this

settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id.

Here, the state proved the elements of the crimes and petitioner's identity as the perpetrator through the testimony of an eyewitness to the crimes (Ms. Seaton), the two victims (Mr. Masood and Ms. Duerst), and an expert (Sergeant O'Lear), who linked petitioner to the official court records of his prior convictions through the fingerprints affixed thereto.

Although petitioner continues insist that he was not the perpetrator, the testimony of an eyewitness and the victims established otherwise. It is clear that, *even alone*, the testimony of a single eyewitness *or* a victim, if found credible by the trier of fact, is sufficient to prove a perpetrator's identity and support a resulting conviction. United States v. King, 703 F.2d 119, 125 (5th Cir. 1983) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." (quotation marks omitted)); Cameron v. Vannoy, Civ. Action No. 18-9502, 2020 WL 2520714, at *10 (E.D. La. May 18, 2020) ("Under both federal and Louisiana law, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the testimony of an eyewitness is generally sufficient to support a conviction."); Bonney v. Tanner, Civ. Action No. 18-7978, 2019 WL 5790808, at *12 (E.D. La. June 7, 2019) ("[A] positive identification by only one witness is sufficient to support a conviction. A positive identification by a victim, as well as the victim's testimony alone, also is sufficient identification evidence regarding the crime committed against that victim." (citation omitted)), adopted, 2019 WL 5784998 (E.D. La. Nov. 6, 2019); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995) ("A victim's positive identification (or by any one witness) of a defendant as well as the victim's testimony alone has been held to constitute sufficient evidence regarding the crime committed against the victim."). Accordingly, where, as here, the state presented the testimony of

*both* an eyewitness *and* the victims, there was clearly more than sufficient evidence for the trier of fact to conclude that petitioner was the perpetrator.[16]

Moreover, to the extent that petitioner is challenging the credibility of the state's witnesses, it must be remembered that credibility determinations are the province of the trier of fact. Therefore, a federal habeas court generally will not grant relief on a sufficiency claim grounded on such issues of credibility.   See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007) ("[T]he crucial issue was which of [the] witnesses was

---

[16] Out of an abundance of caution, the Court notes that, at one point in his federal application, petitioner states: "Ms. Duerst also testified that the co-defendant was the one who had held a gun and robbed her." Rec. Doc. 4-1, p. 13. He then again reasserts that contention in his reply to the state's response. Rec. Doc. 15, p. 4. However, petitioner's co-defendant was Duwan Seaton. At trial, Duerst testified that the day after the robbery she discovered the photos which had been taken with her stolen phone, and, although the person in the photos was unknown to her at that time, she now knew that the person was Duwan Seaton. State Rec., Vol. 5 of 6, transcript of December 2, 2015, pp. 32 and 39. Duerst further expressly testified that the person in the photos was *not* the person who robbed her:

> Q.      And the person depicted in those photographs, did you recognize that person?
>
> A.      No.
>
> Q.      The person depicted in those photographs, was that the person who robbed you?
>
> A.      No.

Id. at p. 35.   In addition, the Court notes that Seaton is a female, but Duerst testified that the person who robbed her was a male:

> Q.      … The individual who pointed his gun at you, was it a male or female?
>
> A.      It was male.
>
> Q.      As best as you can remember give a description to the judge what this individual looked like if you can.
>
> A.      A light-skinned black male about my height and age with kind of a ruddy complexion. Maybe stubble, acne or pot [sic] scars on his face and the weapon.

Id. at p. 32.

lying …. The judge, as the trier of fact, was obviously the one in the best position to make that

call, and it is a matter appropriately left to him.").

To summarize: when the evidence in the instant case is viewed in the light most favorable

to the prosecution, it simply cannot be said that the guilty verdicts were *irrational*. Therefore,

petitioner cannot show that the state court's decision denying his claim was contrary to, or involved

an unreasonable application of, clearly established federal law, as determined by the Supreme

Court of the United States. Accordingly, under the doubly deferential standards of review which

must be applied, this Court should likewise deny relief.

### B. Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel. When he raised

that claim in his state post-conviction application, it was denied on the merits. Specifically, after

noting that such claims must be assessed under the principles set forth in Strickland v. Washington,

466 U.S. 668 (1984), and its progeny, which requires that a petitioner establish both that his

counsel's performance was deficient and that prejudice resulted, the state district court held:

> The petitioner in this case fails to prove either prong of the Strickland
> standard. At trial on this matter, counsel provided a meaningful defense. Counsel
> raised objections, cross-examined witnesses, and made arguments on behalf of his
> client. The petitioner was convicted due to the heavy weight of the evidence, not
> deficiencies of his trial counsel.
> In addition, the complaint that petitioner did not receive the same sentence
> as a co-defendant has no merit. There is no requirement that a co-defendant
> receives the same sentence.[17]

The Louisiana Fifth Circuit Court of Appeal likewise denied relief, stating:

> To prove ineffective assistance of counsel, a defendant must satisfy the two-
> prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80

---

[17] State Rec., Vol. 2 of 6, Order dated November 9, 2017. The state district court also alternatively denied the claim in part on procedural grounds, namely that the claim was a prohibited post-conviction sentencing challenge. However, because the appellate courts did not rely on that basis for their denials of the claim, and because the state does not argue that this claim was procedurally defaulted, this Court need not consider that portion of the opinion in its review of the claim.

L.Ed.2d 674 (1984). <u>State v. Casimer</u>, 12-678 (La. App. 5 Cir. 3/13/13), 113 So.3d 1129, 1141. Under the <u>Strickland</u> test, a defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. <u>Id.</u> After review, we agree with the trial court that relator failed to meet his burden of proving either prong of the <u>Strickland</u> test.[18]

The Louisiana Supreme Court then denied petitioner's claim, simply stating: "Applicant fails to show that he received ineffective assistance of counsel under the standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."[19]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting such a claim on the merits unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002). Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-

---

[18] <u>Alexander v. State</u>, No. 18-KH-44 (La. App. 5th Cir. Jan. 30, 2018); State Rec., Vol. 2 of 6.
[19] <u>State v. Alexander</u>, 264 So. 3d 1202 (La. 2019); State Rec., Vol. 6 of 6.

> by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).   The Supreme Court then explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.   An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.   Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.   It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.   The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.   *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*   The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.   Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).   *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id.</u> at 105 (emphasis added; citations omitted).   Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).   For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to any aspect of petitioner's ineffective assistance of counsel claim.

As the state courts correctly held, <u>Strickland</u> is the clearly established federal law governing such claims, and it requires that a petitioner make *two* showings: (1) counsel's performance was deficient *and* (2) counsel's deficient performance resulted in actual prejudice to the petitioner. <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984).

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u> In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett</u>, 796 F.2d at 793.

Here, petitioner argues that counsel "failed to fully investigate the Petitioner's case."[20]  As an initial matter, the Court notes that petitioner has never offered any evidence whatsoever as to what steps counsel took or failed to take in investigating the case.  Without such evidence, he cannot show that counsel performed deficiently in that respect.  Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016).

Moreover, in any event, even if petitioner had made that showing, he would then additionally have to show that prejudice resulted from the inadequate investigation.  To make that showing, he must point to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Because petitioner has not identified any additional beneficial evidence that could have been discovered through more thorough investigation, his claim is wholly speculative and, therefore, necessarily fails.  See, e.g., Perry v. Louisiana, Civ. Action No. 19-13002, 2020 WL 1892794, at *19 (E.D. La. Mar. 30, 2020), adopted, 2020 WL 1889188 (E.D. La. Apr. 16, 2020); Eaglin v. Louisiana, Civ. Action No. 19-9659, 2020 WL 475770, at *25 (E.D. La. Jan. 7, 2020), adopted, 2020 WL 474923 (E.D. La. Jan. 20, 2020).

Petitioner also argues that "counsel failed to have key witnesses called before the court to testify."[21]  However, the only specific allegation he makes with respect to that argument is that "[c]ounsel for Petitioner failed to have Seaton brought forth before the trial court and cross-

---

[20] Rec. Doc. 4-1, p. 12.
[21] Id.

examined as to the actual facts of the incident and what had actually occurred."[22] If he actually meant Seaton, then his claim is clearly frivolous because Seaton did testify at trial and was vigorously cross-examined.[23] On the other hand, if he meant some other individual, his claim still fails for the following reasons.

The United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.* This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (emphasis added; citations, quotation marks, and brackets omitted). The Fifth Circuit has further cautioned that "the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'" Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).

In this case, petitioner presented no evidence, such as an affidavit from *any* uncalled witnesses, demonstrating that they were available to testify at trial and would in fact have testified in a manner beneficial to the defense. Therefore, he has obviously failed to meet his burden of proof with respect to this claim. See, e.g., Cox v. Stephens, 602 F. App'x 141, 146 (5th Cir. 2015) (rejecting a claim that counsel was ineffective for failing to call witnesses at trial, noting, "Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified; identify the content of their testimony; or support that their testimony would have been

---

[22] Id.
[23] State Rec., Vol. 5 of 6, transcript of December 2, 2015, pp. 81-127.

favorable"); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Lastly, petitioner argues that counsel "failed to have the sentence of the Petitioner and the Co-defendant imposed as one and the same."[24]  However, as the state district court correctly observed, there is no requirement that co-defendants receive the same sentence.  Because there was simply no way for counsel to accomplish this feat, she cannot be deemed ineffective for failing to do so.  <u>See, e.g.</u>, <u>United States v. Cronic</u>, 466 U.S. 648, 656 n.19 (1984) ("[T]he Sixth Amendment does not require that counsel do what is impossible...."); <u>Franklin v. Thompson</u>, Civ. Action No. 07-543, 2007 WL 3046642, at *11 (E.D. La. Oct. 17, 2007) ("Counsel cannot be considered ineffective for failing to accomplish the impossible.").

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision denying his ineffective assistance of counsel claim on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He has not made that showing in the instant case.  Accordingly, under the

---

[24] Rec. Doc. 4-1, p. 12.

AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** the federal application for habeas corpus relief filed by Ronald Alexander be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[25]

New Orleans, Louisiana, this ___29th___ day of September, 2020.


_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[25] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.